February 18, 1993

CLERK OF COURT
SUPREME COURT. CNMI
FILED

93 FEB 18 P3: 20

BY:

# IN THE SUPREME COURT OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

STANLEY T. TORRES,              )       APPEAL NO. 92-004
                                )       CIVIL ACTION NO. 91-1095
     Plaintiff/Appellant,       )
                                )
          vs.                   )          OPINION
                                )
MARIANAS PUBLIC LAND            )
CORPORATION, and NAKAMOTO       )
ENTERPRISES, LTD.,              )
                                )
     Defendants/Appellees.      )
_____ )

Argued and Submitted November 20, 1992

Counsel for Appellant:          Reynaldo Yana
                                P.O. Box 52
                                Saipan, MP  96950

Counsel for Appellee            Brian W. McMahon
Marianas Public Land Corp.:     P.O. Box 1267
                                Saipan, MP  96950

Counsel for Appellee            Douglas F. Cushnie
Nakamoto Enterprises, Ltd.:     P.O. Box 949
                                Saipan, MP  96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

VILLAGOMEZ, Justice:

### FACTUAL AND PROCEDURAL HISTORY

On August 2, 1991, the Marianas Public Land Corporation ("MPLC") leased to Nakamoto Enterprises, Ltd. ("Nakamoto") 22,950 square meters of beach-front, public land situated in the "Samoan

485

Housing" area in Garapan. Nakamoto leased the land to construct and operate, among other things, a first-class resort hotel of approximately 450 rooms.

Stanley T. Torres, a Commonwealth legislator and the plaintiff in this action ("plaintiff"), opposed the lease agreement and brought this action seeking, among other relief, to have the lease declared null and void.

Plaintiff's complaint set forth three causes of action. The first alleged that MPLC breached its strict standard of fiduciary care under Article XI, Section 4(c)[1] of the Commonwealth Constitution by leasing such land to Nakamoto.

The second cause of action alleged that (a) the leased property exceeds five hectares, requiring approval of the lease by the legislature, which approval was not obtained, and (b) the lease failed to expressly prohibit the construction of permanent structures within 150 feet of the high water mark, as required by law.

The third cause of action alleged that the construction and operation of the hotel will result in adverse environmental impact and would violate plaintiff's right to a clean and healthful public

---

[1] NMI Constitution

Article XI: Public Lands.

    Section 4: Marianas Public Land Corporation.

        (c) The directors shall serve a term of four years except that two of the first five directors appointed shall serve a term of two years and three shall serve a term of four years. A director may not hold a paid position in the corporation. The director shall be held to strict standards of fiduciary care.

environment, guaranteed by Article I, Section 9[2] of the Common-wealth Constitution.

On December 20, 1991, MPLC moved to dismiss the complaint pursuant to Rule 12(b)(6), Com.R.Civ.P., for failure to state a claim upon which relief can be granted. On January 14, 1992, plaintiff filed a response to the motion, together with a motion for summary judgment. MPLC and Nakamoto each filed written opposition to plaintiff's motion for summary judgment.

MPLC's motion to dismiss was heard on January 22, 1992, and was denied on February 3, 1992.[3] The trial court "[found] that there [were] sufficient allegations to state a claim for which relief [could] be granted."[4]

On February 26, 1992, the trial court heard plaintiff's motion for summary judgment. On March 12, the court issued an order which, in part, stated: "The [c]ourt finds that there is no genuine issue of material fact in Plaintiff's First and Second Causes of Action and determines that those causes of action are

---

[2] NMI Constitution.

> Article I: Personal Rights. . .
>
> Section 9: Clean and Healthful Environment.
>
> > Each person has the right to a clean and healthful public environment in all areas, including the land, air, and water. Harmful and unnecessary noise pollution, and the storage of nuclear or radioactive material and the dumping or storage of any type of nuclear waste within the surface or submerged lands and waters of the Northern Mariana Islands, are prohibited except as provided by law.

[3] After the plaintiff filed its first amended complaint, the Commonwealth Government, which was one of the originally-named defendants, moved to dismiss the action as to itself on the grounds that it was not a party to the lease agreement. The motion was granted on January 31, 1992.

[4] Plaintiff then renewed his motion for summary judgment on February 3, 1992, incorporating his memorandum of points and authorities in support of his earlier motion for summary judgment. This was apparently done after the court denied MPLC's Rule 12(b)(6) motion.

ripe for summary judgment." The court then dismissed the first and second causes of action, instead of granting or denying plaintiff's motion for summary judgment. It concluded, however, that "the third cause of action contains genuine issues of material facts," and asked the parties to brief the issue of whether it had jurisdiction over the third cause of action.

Nakamoto, "in order to more precisely present the issue to the court," filed a motion to dismiss the third cause of action pursuant to Rule 12(b)(1), Com.R.Civ.P. -- lack of subject matter jurisdiction.

The trial court held a hearing on the third cause of action on April 2, 1992, and dismissed it by written order on April 7, 1992, stating that"[t]he proper agency to address the issue is the [CRM]" and, until CRM has done so, the issue is not ripe for adjudication. In that order, the trial court indicated that it had previously dismissed the first two causes of action under Rule 12(b)(6). The court stated: "The [c]ourt has previously dismissed the first and second cause[s] of action of Plaintiff's Complaint on the basis that the two causes of action fail to state a claim."

The plaintiff timely appealed.

During the pendency of this appeal, MPLC terminated the lease agreement due to Nakamoto's alleged failure to perform certain conditions imposed by the lease. Nakamoto has since sued MPLC seeking a declaratory judgment that the purported termination of the lease agreement by MPLC was ineffective and that the lease is still valid. That action is still pending below.

## ISSUES PRESENTED

The two issues raised for our review are:

1. Whether the trial court erred in dismissing the first cause of action pursuant to Rule 12(b)(6).[5]

2. Whether the trial court lacks jurisdiction over the third cause of action.

## ANALYSIS

A. <u>The dismissal of the first cause of action under Rule 12(b)(6)</u>.

The trial court initially heard and denied MPLC's motion to dismiss the complaint pursuant to Rule 12(b)(6). In denying the motion, it found that there were sufficient allegations to state a claim upon which relief could be granted. In its subsequent ruling on plaintiff's motion for summary judgment, the court dismissed plaintiff's first and second causes of action pursuant to Rule 12(b)(6), although there was no Rule 12(b)(6) motion before it. Thereafter, it also dismissed the third cause of action for lack of jurisdiction, stating in its order that its earlier dismissal of the first and second causes of action was for failure to state a claim. That had to be pursuant to Rule 12(b)(6).

Rule 12(b)(6) permits the filing of a motion to dismiss the complaint, before the filing of a responsive pleading (e.g., an answer to the complaint), for failure to state a claim upon which relief can be granted.

The present case is quite similar, in terms of the allegations

---

[5] The dismissal of the second cause of action was not appealed.

made and the issues raised, as those presented in Govendo v. MPLC & AIBIC, No. 90-036 (N.M.I. Feb. 11, 1992). Indeed, a comparison of the complaint in Govendo with the complaint in this case shows that the complaint appears to be patterned after the Govendo complaint, but with several significant differences. The differences consist of additional allegations made in the complaint in this case which were not made in the Govendo complaint. Those allegations are contained in paragraphs 8(d) and (e) of the complaint in this case.[6]

In Govendo, there was no allegation regarding appraisal of the land or any public expression of intent to use the land for a particular purpose. We found that the allegations in Govendo did not adequately state a claim upon which relief could be granted. Absent any allegation that the lease would adversely affect an expressed public interest, we determined that MPLC, as trustee, has no affirmative duty to inquire further before granting the lease.

In the instant case, however, it is alleged that the Sixth and Seventh Legislature, together with the Saipan Legislative Delegation, have expressed by formal resolution, the public's wishes to designate the Samoan Housing area for a public park.

---

[6] Paragraphs 8(d) and (e) state:

(d) MPLC did not consider or wrongfully considered the best interest of the public in preserving public land for public uses by ignoring the intent and wishes of the public to have the area preserved for a public park as expressed by their elected representatives in resolutions adopted by the Sixth Legislature, Seventh Legislature, and the Saipan Legislative Delegation and submitted to MPLC.

(e) MPLC knew that the appraisal report is not consistent with other land appraisals with similar land appraisals of similar size, location size and value and, therefore, is not in the best interest of the people of the CNMI.

490

This allegation is significant because MPLC, as trustee, has an affirmative duty to consider whether an expression has merit or not. Here, it chose not to give any consideration to such expression. We are not saying that MLPC must follow whatever public expression is made by the people who own the land -- the beneficiary. Rather, MPLC, as a fiduciary, must consider legitimate public expressions made with respect to public land disposition before it takes final action thereon.

Plaintiff further alleged that MPLC could have negotiated better terms than the lease terms executed with Nakamoto. Such allegation, if true, may constitute a breach of MPLC's fiduciary duty. We note that MPLC, although an autonomous agency of the government, may not do as it pleases when leasing out public lands. It must comply with the highest standards expected of fiduciaries.

For the above reasons, we conclude that the first cause of action stated a claim upon which relief can be granted.

## B. The issue of "jurisdiction."

In its order of April 7, 1992, the court dismissed the third cause of action on the basis that until CRM has reviewed Nakamoto's application for a CRM permit and has ruled on that application, the trial court has no jurisdiction. We disagree.

MPLC has already executed a lease in favor of Nakamoto, covering 22,950 square meters of public land situated next to the lagoon. The lease agreement provides for the construction and operation of, among other things, a first-class resort hotel

491

consisting of approximately 450 rooms. It is a comparatively large project on Saipan, such that there is validity to the concern that, if completed, the project would adversely affect the environment, including the lagoon. Again, we are not saying that the project, when completed, would in fact have adverse environmental consequences. But for purposes of a Rule 12(b)(6) motions, the allegations do state a claim, and the court has jurisdiction to hear the case.

While it is true that CRM must first grant a permit before any structure is erected on the leased site, its permitting authority does not pre-empt the Court from considering whether the lease, if carried out, would have an unremediable impact on the environment.

In Govendo, we ruled that Article 1, Section 9 of the Constitution is self-executing. We also ruled in that case that plaintiff did state a claim upon which relief could be granted based on allegations similar to the one stated in the complaint in this case, without regard to whether CRM must first grant a permit. The issue of whether the construction of the proposed hotel would violate plaintiff's rights under this section does not have to wait until CRM grants a permit to lessee. It may be wiser to wait for CRM's action on lessee's permit application, but that does not render the cause premature for adjudication by the court.

## CONCLUSION

For the above reasons, we **REVERSE** the trial court's dismissal of the first and third causes of action and **REMAND** the case for

492

further proceedings. Such further proceedings should, however, be stayed below until the lawsuit questioning the validity of MPLC's termination of the lease has been resolved. If the lease agreement is ultimately determined to have been terminated, then any further proceedings in this case would be moot. If the lease is determined to still be valid and enforceable, then the trial court may thereafter proceed to consider the merits of the first and third causes of action in this case.

Dated this 18th day of February, 1993.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
JESUS C. BORJA, Associate Justice